The case on the record is 515-0541. People, me, Jerry, Courtney, are these here? Okay. Thank you. Good morning. You're really making it tough on Ms. Crotty. You may begin when you're ready. Thank you. May I please the court? Counsel? My name is Elizabeth Crotty and I represent Jerry Courtney in this matter. This case involves multiple critical errors by trial counsel that undermines confidence in the fairness of the adversarial proceedings and the result in this case. Specifically, trial counsel repeatedly failed to use significant impeachment material and cross-examination material to undermine the credibility of the state's witnesses. And that failure resulted in the jury not being aware of a critical issue of fact pertaining to the most serious charge in this case. And that was aggravated possession of 11 to 20 stolen firearms. Specifically, counsel's failures did not undermine the number, the state's burden of proof on the number of guns that were taken during the residential burglary and possessed or knowingly possessed by Mr. Courtney. The state's evidence of the number of firearms was limited to the complainant, Gerald Benjamin, and his grandson who was involved and planned the robbery, Nathaniel Benjamin. Yet, the record on appeal shows that there is evidence that Gerald did not have an accurate inventory of the number of firearms that were in his home on the date of the residential burglary. And the only person to confirm that all of the guns were stolen during that burglary was Nathaniel Benjamin, who the record shows had taken at least two guns prior to the date of the robbery of the burglary, pawned those for money, and had continuous access between when he departed his grandfather's residence on the 19th and when he returned for the charged residential burglary on the 21st. And that significantly undermines the burden of proof on the number of firearms had counsel brought to the attention of the jury the significant impeachment material of the state's key witnesses. Specifically, less than two weeks before trial, counsel told the court that she did not feel fully prepared, but that she would do her best. Defense counsel said she wasn't prepared, but she'd do her best. Yes. Are you arguing that as an issue of ineffective assistance of counsel? This altogether is an ineffective assistance of counsel claim, yes. Okay. So her comments on the record support that her errors were not strategic and they were not reasonable. Well, I want to go back to one of the issues you raised, which is Nathaniel and Bianca Meeks had prior inconsistent statements. Yes. Pretty inconsistent. Yes. And also they had pending felony charges, which were not brought up. So there are, there's... What do you think about that, as opposed to just saying I'm really not ready yet? Right. So the I'm not ready yet would normally not be enough to raise this issue, certainly. And she also at the same time asked for a continuum. She did not, no. She did not. She just made that statement. She made the statement. There's suggestion that Mr. Courtney wanted to proceed to trial, but it also becomes clear through the dialogue that he was dissatisfied with counsel's services, was not only able to get other counsel and says, well, if we're not going to do anything here, we might as well just go ahead and get it over with. But it's up to counsel to be ready at trial and to decide whether a continuance is necessary. But to return to the errors, and the names in this are complicated because we have Gerald Benjamin, Nathaniel Benjamin, Nicholas Meeks, and Bianca Meeks. And so the specific, just to run through these to make sure we're clear, Nathaniel Benjamin is the grandson who planned and perpetrated the residential burglary and had stolen from his grandfather previously. We know he had taken a credit card. That was a charge that ultimately got dropped because his grandfather didn't want to pursue it. Right, correct. Then we've got these two firearms that we know he pawned on the 19th, which is the day he left his grandfather's house for his parents' house before he cut his ankle bracelet and went, as they describe it, on the lam. Was that brought out? No, that was not brought out. In fact, counsel didn't cross-examine him at all. And in addition to these key issues, he has a prior inconsistent. He's caught in Mount Vernon with a truck full of firearms. And then he says, well, I don't know anything about the residential burglary. I wasn't there. And his prior statement changes repeatedly in his discussions with the police. He says, well, I might have told them about the firearms, but I didn't help them. And then he says, well, I was there, but they went in the house. And then at trial he turns around and says, you know, I did this. I want to come clean. I had a drug problem. You know, this is my grandfather. And none of his inconsistencies, none of his stated desire for consideration from the police, for himself and his girlfriend, who he conveniently left out of his testimony at trial, none of that is brought up to the jury. Then we have Bianca Meeks, who is alternately called Mr. Courtney's girlfriend or friend. She testified at trial that she drove Mr. Courtney, Pete Johnson, Nathaniel Benjamin, and Nathaniel Benjamin's unnamed girlfriend to the residence. The men perpetrated the burglary, so she was not witness to what they actually took, except that they came out with backpacks and she saw two long guns. Now, she had a prior inconsistent statement denying any involvement, saying she hadn't even seen Mr. Courtney in the few days before she was picked up by police. And more importantly, she was never charged for her participation in this burglary, and she had pending, and the greatest was a class X, pending methamphetamine-related charges that she had entered into negotiations with the state. None of that was brought up? None of that was brought up. Then we have Nicholas Meeks, her brother, who testified at trial in a more limited capacity, but did place at least one of the firearms that were stolen in Mr. Courtney's possession. I'm sorry, I want to interrupt you. Back to the fact that she had pending meth production charges, would you agree that at least there was some strategy maybe involved in not bringing that up, since he was found, the defendant was also at the trailer where they found the meth? I would not agree that there was a reasonable strategy for not bringing that up, because to do so you have to ignore essentially the rules of pretrial litigation and the rules of evidence. You can absolutely impeach a witness with their pending charges without bringing up the defendant's involvement in those charges. What's at issue for the impeachment for that, it's not the participation in the event, it's not the nature of the event, it's not an issue of character. What it is is saying, hey, the state has this huge charge against you and you have a motivation to cooperate with the state. So you don't think there would be any way that it would be opening the door to getting into that? Not if the impeachment was done properly and it was litigated pretrial, which is how much the state gave her an opportunity to do. They said, well, we'll bring this up, and instead of citing law that says, well, actually you can't bring that up if I don't get into the facts of the case for some other reason, if I just bring it up for impeachment purposes, you can't get into that. She says, well, I don't know what would happen, that's a really great question. And that's unreasonable assistance of counsel. And then further, Nicholas Meeks, the brother, also had pending meth charges that he had entered into negotiations with the state. That was not brought before the jury. And finally, we have evidence in a police report that was attached to the PSI that Gerald Benjamin, the owner of the firearms and the residence, two of the guns that he initially reported that were stolen during this residential burglary that happened on the 21st, those were pawned on the 19th. He didn't know that. So he didn't know what firearms were in his home. And while that might not sound like a huge issue for 16 firearms, it is because his firearms were mostly stored out of sight. Certainly some of them, you know, there's one by his bed, there's one by his recliner, but there's also many guns in the basement in a safe, and there are guns stored in a false, it's alternately described as a false step or a false floor in one of his closets. So these aren't things he's seeing every day and saying, here are my firearms, I know exactly what's in here. We know he didn't know. In light of the evidence, though, how was your client prejudiced? Absolutely. So as stated in the briefs, we're not arguing that given what we have in the record, if counsel had done these impeachments properly, that he would have been acquitted on all charges. There's certainly evidence tying him to this. So there's no prejudice? No, because the key issue is the most serious charge for which he was sentenced to 25 years in the Department of Corrections. That's the 11 to 20 firearms. And you only get to 11 to 20 firearms by counting on Gerald and Nathaniel Benjamin. Nathaniel Benjamin risked more serious charges, more serious sentencing, and potentially issues for his girlfriend that he was trying to protect if these happened in separate events rather than a single residential burglary. The only other? I'm going to let you come back to that and rebuttal because I'd like to hear more about that. Okay. Thank you, Your Honor. Okay. I can't read your name. Chelsea Kasten. Okay. May it please the Court, Counsel, Chelsea Kasten on behalf of the State. Your Honors, I open with a quote from the trial court in this case. Just because there's no cross-examination doesn't mean that there should have been one in the first place. Defendant in this case was a very difficult client who took no responsibility for his own actions, which is reflected in the pre-sentence investigation in the record, Your Honors. His attorney was forced to prepare to the best of her ability for a very quick trial because the defendant refused to postpone his trial date where there were none available in December. It would either go to January or November, and he did not want to wait. The witnesses in this case were either law enforcement or co-defendants, and defendant was facing bifurcated methamphetamine charges that arose during the course of the investigation for this case. Trial counsel had to try carefully so as not to open the door and have that information introduced at trial, which would have painted the defendant in a worse light than this case already did given the overwhelming evidence against him. Ms. Kessler, we just heard defense counsel indicate that there was – she's not arguing that the outcome would have been different, but she is arguing about the offense of 11 to whatever number of guns. Twenty. Twenty? Thank you. Yes, Your Honor. That seems to be the significant issue here. Could you possibly address that in the sentencing? Certainly, Your Honor. The state holds that there was an amended and completed list that was presented at trial, and so whether or not the state had sufficiently proven enough evidence to show that he did in fact have X number of guns was actually a question left up to the jury, and the jury found that, yes, he was in fact guilty. While it's true that there were two guns, which the grandson in this case admitted that he had stolen at an earlier date, the list was amended before trial. So you're saying that there was always going to be evidence of at least 11? Yes, Your Honor. The victim in this case was retired law enforcement. He was the sheriff in the area, so he had an extensive collection of personal firearms in this case, and so even with the two taken out of the list, it was still sufficient in this case to prove. Except there wasn't really any real reasonable evidence. I thought that it was only two. Are you saying that he came up with, I guess, a count of the difference of what he had and that there were only two taken and that put it still within the charge of 11? Your Honor, it's... And I meant taken by his grandson. Yes, yes. My understanding is that Nathaniel Benjamin admitted, yes, I sold these other two firearms earlier through the investigation of law enforcement, who found that they had been taken at an earlier date, and so the list was amended. So there was never any incorrect information that was presented to the jury. So that was a credibility issue then, basically, that the... Yes, Your Honor, which would have gone to the jury to decide. Which trial counsel chose to bring up during her closing arguments when she discussed the credibility of witnesses, which in this case, when you do have to tread so carefully because there were a lot of characters involved in these crimes, you don't want that information to be brought up. You don't want information you're not prepared for to come out when someone's on the stand. So it was a safer bet to protect her client by telling the jury, credibility of witnesses is up to you. And she did that in closing arguments rather than possibly open up a door that would have introduced evidence of an additional crime in this case, which also included an infant child in the home where they were manufacturing the methamphetamine. It already looks bad enough that they stole from a public servant in the area who is retired and trying to enjoy his life. If you introduce on top of that, you have a bifurcated case. Nathaniel was related to him, living in the home. Yes, you're right. It's kind of just a sad case, really. It's a sad case. His grandson admittedly got involved with drugs, and so his actions on their own are sad. And then you bring in the defendant in this case who had significant prior charges. And so trial counsel, to the best of her ability, had to defend this individual who frankly wasn't listening to any of her advice. She disclosed every time the state made a deal for him. He said he didn't want a deal. He insisted on testifying on his own behalf. She has to let him testify if he wants to, but she also had to ask him questions that weren't going to open the door for the state to then introduce more evidence against him in the case. In terms of the cross-examinations, Your Honor, elaborations by the witnesses could have justified a harsher sentence or introduced evidence which was purposely being excluded from the trial, and they were being excluded for a reason. And these were pending charges that related back to the defendant. In terms of looking at Bianca Meeks, she did try to question Bianca Meeks. However, it's up to the discretion of the trial court of how much latitude is going to be allowed. And so if she asked her a question on cross, then in rebuttal it could have opened up a whole other door for the state to further ask her questions about the methamphetamine charges. In addition, Your Honor, the defendant conceded the outcome would not have been different in this case, and the standard here is that the defendant has to show that counsel's performance was deficient and it would have prejudiced his defense. The evidence in this case was overwhelming. It was an incredibly difficult case for any attorney to have to take to trial and represent their client to the best of their ability. Then you take on top of that the fact that this was a difficult client. I think our Appendix A on the People's Brief can adequately show, Your Honors, that trial counsel was adequately prepared for the jury trial to the best of her ability. She did try to represent her client, but at some point when someone's so difficult, she just has to say, I'm trying the best I can, but if you're not going to listen to me, there's only so much I can do. And so the people would argue that in this case, trial counsel was more than effective in representing her client to the best of her ability. This was just a case where there was overwhelming evidence against her client, and so she chose her strategy carefully and went to introduce evidence such as addressing the credibility of witnesses and closing argument. Let me ask you, with respect to her statement that she was not ready yet, does she have a duty at that point when the judge says, I'm sorry, you're headed to trial, does she have a duty to ask for a continuance to put something on the record? Your Honor, at that point, I believe the defendant had already made it clear that he was not willing to wait until a January trial date. But it sounds like she's admitting that she's unprepared. Whether or not it's her fault, does she have a duty then to withdraw? No, Your Honor, because the defendant wanted to go to trial with an attorney. If he was then appointed a new attorney at that point, they were not going to be prepared. But that's his fault. That's his responsibility, or that's his outcome. It is, Your Honor. However, she has a duty to her client, and if he says he wants to go to trial, then she told the court, I'm going to do the best that I can, which is all that you can really ask of any attorney to do at trial. And so she gave them notice, like, my client wants to go now. I would be more comfortable if we went to trial in January, but to the best of my ability, I am going to represent my client. And I don't think that the record would suggest in this case that she was ineffective. In fact, she just did the best that she could under a difficult case in this situation, Your Honors. Do you have any other questions? We would ask that you affirm the ruling of the lower court. Thank you. Thank you very much for your argument. Rebecca? First, I'd like to address a statement by the state that the court has reiterated. Mr. Putnam does not concede that the outcome would not have been different in this case. You don't concede? No. There is a difference between he would have been acquitted on all charges. We concede he likely would not have been acquitted on all charges. However, the standard is, you know, does these errors, do these multiple serious errors undermine confidence in the outcome? And the outcome included conviction on a charge for aggravated possession of 11 to 20 stolen firearms, which there should have been at least an issue of fact for the jury that could have reasonably undermined the state's proof of the number of firearms. And the outcome here was a guilty verdict on that charge that resulted in a 25-year IBOC sentence. His next lowest sentence on these charges was 10 years. So a difference in a 15-year sentence is a different outcome. You know, the second issue, I'd like to go back to the prejudice argument that you, Your Honor, had mentioned earlier. The prejudice here is, and the state says this is a matter of credibility for them to decide whether Nathaniel had taken all these guns at the same time or not. But the jury needed to know in order to have a reasonable ability to decide that issue of credibility that he had given repeated inconsistent statements, that he had asked for consideration, and that he had taken at least two of the firearms on an earlier location, I mean on an earlier date, and had continued access to the residence. He had left that window open on the 19th when he left with at least two of those firearms and could have gone back in the interim. Had no reason to testify truthfully if he had. Excuse me, what was the time period between when he left and the burglary? He left on the 19th, and he was staying still in the general area. Real close by? I believe he was staying with Pete Johnson in Mount Vernon, and this was up in Marion County, and they had been going back and forth. So they went to Centralia, where Mr. Courtney is, and then to Iuka, where Mr. Benjamin's residence is. And then the burglary was committed on what day? On the 21st. Okay, so just a couple of days. Right, so he could have left on the 19th with more firearms, and he couldn't have gone back in between there. That should have been an issue for the jury to decide, and then, and only then, would it have been an issue of credibility. You know, the state asserts that there was a corrected inventory. Yes, they removed those two firearms, but we don't know if the inventory was correct because the only two people who can tell us are Gerald Benjamin, who didn't know those two firearms were stolen, had recently been hospitalized, and would have had to be down on the floor in this false step and down in his basement in the gun safe to accurately count his firearms. And we know that he didn't do that because he didn't notice that two of his guns were missing. And so you've got, you know, Gerald Benjamin, who doesn't know how many firearms there are, and Nathaniel Benjamin, who has every reason to lie about how many firearms he took. And so the prejudice is that adequate counsel could have undermined that key element of this most serious charge. And to turn quickly to some issues that would butt that this was strategic, again, counsel says she's not ready. She absolutely has a duty to be ready for trial and to explain to the court that she needs a continuance if she is not. That is an issue for counsel to decide. There's a very strict, yes, you need to work with your clients. Yes, you need to try to negotiate these sorts of things. But there are certain decisions that are up to counsel, and there are certain decisions that are up to the client. He gets to decide if he wants to testify. He gets to decide if he wants jury trial. She gets to decide if she's ready to go to trial. And if she was not ready, she should not have gone to trial. And her errors make clear that she was, in fact, not ready. Her only option is if the court will let her have a continuance is to withdraw, correct? She did not ask for a continuance. I know that. Right. But what you're saying is she doesn't have to go to trial. That's her only option, as the court says. Her option is to make a clear record for the trial court and for this court to explain why she's not ready and why she can't go to trial. We also know that, you know, she did bring up Bianca's prior inconsistent statement. She says, did you give a statement to police? So this isn't a strategic choice. It's a matter of a trial error. May I? And yet she didn't complete that impeachment. So because of all these errors, we ask that this court reverse the remand for a new trial based on ineffective assistance. Thank you. Thank you for your arguments. We're going to take a brief recess.